IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ASHLEY TESCH, on behalf of herself and all others similarly situated<br><br>Plaintiff,<br>v.<br><br>Dearbrightly, Inc.,<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>Case No.: 3:26-cv-770 |

**FIRST AMENDED COMPLAINT**

1) Plaintiff, ASHLEY TESCH (hereinafter "Tesch"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Dearbrightly, Inc. (hereinafter "Defendant"), and states as follows:

2) Tesch is a visually-impaired and legally blind person who requires screen-reading software to access website content using her computer. Tesch uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual field in the better eye is to 20 degrees or less, or whose visual field in the better eye subtends an angle of 20 degrees or less. Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Indiana, are visually impaired.

4) Tesch brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://www.dearbrightly.com (hereinafter "Website"

or "the Website") to be fully accessible to and independently usable by Tesch and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to their non-disabled customers through the Website. Defendant's denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Tesch's rights under the Americans with Disabilities Act (the "ADA").

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen

to rely on an exclusively visual interface that provides no meaningful accommodations for Screen-reader-users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. By contrast, visually impaired individuals who rely on screen-reading software cannot independently complete a purchase on the Website.

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under both state and federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.Tesch has visited the Website on or about May 12, 2026, with the specific intent of purchasing a retinoid-based skincare moisturizer, specifically the "Daily Sip," on the Website. However, the access barriers described herein continuously prevented Tesch from completing that purchase independently. Tesch suffered, and continues to suffer frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of her rights under the ADA.

10) Tesch is currently, and has been continuously, deterred from returning to the Website by her actual knowledge that the barriers she personally encountered on or about May 12, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Tesch cannot know whether the Website has become accessible without either attempting to use it again, which she reasonably will not do given her past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence,

Tesch intends to and will attempt to purchase a retinoid-based skincare moisturizer, specifically the “Daily Sip”, from the Website again within thirty (30) days and periodically thereafter, once Defendant remedies the access barriers described herein. This concrete and particularized injury – both from Tesch’s past inability to complete a purchase and his ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

11) Tesch has not returned to the Website since May 12, 2026. She has not done so because she has actual knowledge that the barriers she encountered remain in place, and a return visit would subject her to the same discriminatory treatment she experienced before. Tesch's single visit reflects not a lack of interest in Defendant's products, but the fact that Defendant's Website afforded her no means of completing the purchase she came to make. Were the Website accessible, Tesch would use it as she uses other accessible retail websites: to browse, to purchase, and to purchase a retinoid-based skincare moisturizer, specifically the “Daily Sip”, and would be interested in other skincare products Defendant offers that are specifically formulated to be used alongside retinoids.

12) Because Defendant’s Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Tesch seeks a permanent injunction to cause a change in Defendant’s policies, practices, and procedures so that Defendant’s Website will become and remain accessible to blind and visually-impaired consumers.

**JURISDICTION AND VENUE**

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Tesch’s claims arise under the laws of the United States, specifically Title III of the ADA, and 42 U.S.C. § 12181, et seq., as Tesch’s claims are brought pursuant to 42 U.S.C. § 12182 and are enforceable through the remedies, procedures, and rights set forth in 42 U.S.C. § 12188.

14) The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in Indiana and has sufficient minimum contacts with this State to satisfy due process and the Indiana long-arm provision, Indiana Trial Rule 4.4(A). Defendant operates a publicly available interactive commercial Website through it markets, sells, and ships its prescription and non-prescription skincare and related products to consumers throughout the United States, including to consumers located in Indiana and in this District, on a continuous and systematic basis as part of its ordinary retail operations. Tesch's claims arise directly out of Defendant's Indiana directed-conduct: Plaintiff, an Indiana resident, attempted to purchase Defendant's products from Indiana through the Website, and was denied full and equal access as a direct result of the barriers described herein. The exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, as Defendant has continuously and deliberately targeted Indiana consumers as part of its ordinary course of business.

15) Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Tesch attempted to use the subject Website within this Judicial District.

16) Defendant regularly conducts business in the State of Indiana, including in this District. Defendant has committed, and continues to commit, the acts or omissions alleged herein in the Northern District of Indiana causing injury and violated rights the ADA prescribes to Tesch and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Tesch's claims occurred in this District: on or about May 12, 2026, Tesch has been denied the full use and enjoyment of the facilities, goods and services offered to the

general public, on Defendant's Website in or around St. Joseph County. These access barriers that Tesch encountered have caused a denial of Tesch's full and equal access in the past, and now deter Tesch on a regular basis from accessing the Defendant's Website in the future.

17) The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

18) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

19) This lawsuit is aimed at providing visually impaired users like Tesch a full and equal experience.

## THE PARTIES

20) Tesch is and has been at all relevant times a resident of St. Joseph County, State of Indiana.

21) Tesch is legally visually impaired and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Tesch cannot use a computer without the assistance of screen reader software. Tesch has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

22) Defendant, a Delaware Corporation, does business in this State with its principal place of business located at 4900 Shattuck Avenue, Oakland, CA 94609, being represented by its registered agent, Incorporating Services, Ltd., located at 3500 S Dupont Highway, Camden, DE 19934.

23) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a curated selection of telehealth-based prescription skincare, including anti-aging serums, moisturizers, cleansers, and sun protection products, designed to combine clinical effectiveness, convenience, and everyday skincare simplicity. Consumers across the United States use Defendant's Website to purchase personalized prescription skincare products. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Tesch from making an online purchase of a moisturizer.

## NATURE OF THE CASE

24) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, and researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

25) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

26) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

27) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

28) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Numerous courts have looked to the WCAG as a benchmark in evaluating website accessibility. Many Courts have also established WCAG 2.2 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience

of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

29) Defendant controls and operates the Website in the State of Indiana and throughout the United States.

30) The Website is a commercial platform through which consumers can browse and offers products and services for online sale. The online store allows the user to view personalized prescription skincare products, make purchases, and perform a variety of other functions.

31) Among the features offered by the Website are the following:

a) Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Instagram, Twitter (X), LinkedIn, YouTube, TikTok;

b) An online store that allows customers to purchase a curated selection of telehealth-based prescription skincare, including anti-aging serums, moisturizers, cleansers, and sun protection products, designed to combine clinical effectiveness, convenience, and everyday skincare simplicity, and other products for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading customer reviews, reading blog posts, and learning about the company, amongst other features.

32) This case concerns Defendant's policy and practice of denying visually impaired individuals access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and

are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

33) Defendant denies the visually impaired users access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

34) The Website contains access barriers that prevent free and full use by Tesch and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: inaccurate landmark structure, inadequate focus order, changing of content without advance warning, lack of alt-text on graphics, informative images coded as background images, the failure of keyboard focus to move to a modal dialog when one opens, empty links that contain no text, and links that lead to non-functional pages.

35) Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. There are many important images on the Website that lack a text equivalent, and others whose text equivalent does not describe the image's content or function. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on the Website that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a visually impaired computer user). As a result, Tesch and visually impaired individuals are unable to determine what is on the Website, browse the Website or investigate and/or make purchases.

36) When visiting the Website on or about May 12, 2026, using JAWS screen-reader, Tesch encountered accessibility barriers that denied her full and equal access to the Website and prevented her from completing her intended purchase and prevented her from completing her intended purchase. The barriers described are not isolated or transient defects but are structural features of the Website's design and coding that affect core functions of the Website, including but not limited to, navigation, product selection, and keyboard operation, which render the Website inaccessible to, and not independently usable by blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class she seeks to represent.

37) The barriers Tesch encountered on or about May 12, 2026, and the barriers that continue to prevent blind and visually impaired individuals from independently using the Website, include the following:

a) Blind users become disoriented when the automatic pop-up window appeared on the web page. Blind users have significant difficulty knowing when automatic visual context change had occurred, such as a new window popping up;

b) Blind users encountered interactive purchase option controls that failed to receive focus via the Tab key because they lacked native keyboard semantics or standard focusable attributes. Consequently, when blind users reached them, the screen reader did not announce a role or state (such as selected or unselected), leaving her unaware that the elements were selectable.

c) Informative images are used as background images, and do not have alternative text. Blind users are unaware of what non-text content elements are missed;

d) Landmarks are not properly implemented on the home page, preventing blind users from navigating the page by landmarks and accessing its main regions due to inaccurate landmark markup;

e) The landmark structure is incorrectly defined. Due to repetitive landmark labels, blind users have difficulty identifying the page sections that the landmarks lead to;

f) Interactive elements are not programmatically associated with their labels. As a result, screen reader software does not announce their accessible names, making it difficult for blind users to identify the purpose of the interactive elements;

g) Interactive elements are not programmatically associated with their labels. As a result, screen reader software does not announce their accessible names, making it difficult for blind users to identify the purpose of the interactive elements;

h) Labels of interactive elements do not provide sufficient context to identify their purpose. As a result, blind users cannot clearly determine the function or destination of the interactive elements;

i) Interactive elements cannot be focused with the Tab key. The Website does not provide helpful instructions on how to access the interactive element using arrow keys. Assistive technology users are therefore unaware of those interactive elements on the web page;

j) Several links use ambiguous text that does not clearly describe their purpose or destination, making it difficult for blind users to determine where the links lead;

k) Repetitive link text does not provide sufficient context to distinguish between links. As a result, blind users have difficulty identifying the purpose or destination of the links when they are announced separately from their context.

l) Links do not indicate when they open new windows or tabs, making unexpected changes in context difficult for blind users to anticipate and creating disorientation.

m) Required form fields are not clearly identified, and sufficient input instructions are not provided. As a result, blind users cannot determine which fields must be completed before submitting the form;

n) Non-interactive elements are included in the keyboard focus order. As a result, blind users encounter unnecessary focus stops that do not provide meaningful interaction, making keyboard navigation less efficient;

o) Status messages are not programmatically announced, preventing blind users from receiving important feedback about errors or required actions.

38) Consequently, visually impaired customers who rely on screen-reading software are unable to complete a purchase on the Website independently.

39) The Website cannot be used to complete a transaction by keyboard alone through the completion of a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Tesch and visually impaired people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Tesch and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone through to the completion of a transaction, denies Tesch and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

40) Due to the Website's inaccessibility, Tesch and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require

assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 2.4.3 'Focus Order', the focus must move in a predictable and logical order through all interactive elements on the page. Ensuring proper focus order enables users, including those using assistive technologies such as screen readers or keyboard-only navigation, to navigate the content efficiently. If the focus order is not logically structured, users may become disoriented, making it difficult for them to understand or interact with the page's elements. This can significantly impair the accessibility and usability of a website for individuals with disabilities. Thus, Defendant's inaccessible design deprives Tesch and visually impaired customers of the opportunity to make purchases on the Website on their own.

41) The Website thus contains access barriers that deny full and equal access to Tesch, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website the State of Indiana and throughout the United States.

42) Tesch attempted to complete a purchase on the Website. On or about May 12, 2026, following a personal recommendation from a friend and while searching online for personalized skincare solutions, Tesch, who is blind and uses screen reader software to browse the internet, accessed Defendant's Website, dearbrightly.com. As part of her skincare routine, Tesch had recently added retinoids to help maintain her skin health and texture, and she sought a product specifically formulated to be used alongside active ingredients such as retinol in order to keep that routine comfortable and balanced for her skin. Having learned in the course of her search that Defendant offers prescription skincare options and related skincare products, including retinoid-based face treatments, eye serums, vitamin C treatments, cleansers, moisturizers, and sun protection products, she decided to explore the Website and its available products. Tesch also

encountered customer feedback discussing the convenience of the Website's skin assessment process, the use of customized tretinoin treatments, and the suitability of certain products for daily skincare routines. Encouraged by this information, Tesch explored the Website with the intent to make a purchase. During her visit, Tesch became interested in a moisturizer, specifically the "Daily Sip," and attempted to purchase it. However, while navigating the Website using her screen reader, she encountered multiple accessibility barriers that prevented her from independently completing the transaction. Specifically, on the product page, the product images were coded as background images rather than as content, so her screen reader announced nothing at all where sighted users see the product. As a result, Tesch was denied access to meaningful image descriptions, could not learn important product details conveyed only through those images, and could not independently evaluate the product she was considering buying. In addition, when Tesch added an item to the cart, a cart dialog opened on the screen, but keyboard focus did not move from the "Add to Cart" button to that dialog. She was left behind the dialog, moving through parts of the page that were covered up and out of view, unable to interact with the dialog or to locate the checkout button within it. Furthermore, when Tesch attempted to open the cart directly, the cart link led to a non-functional page, which prevented her from reaching the item she had added, from confirming what was in her cart, and from proceeding to checkout by any route. She was ultimately unable to complete her purchase. These access barriers render the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

43) Tesch specifically prefers Defendant's Daily Sip moisturizer and the related skincare products Defendant offers over other available alternatives. Tesch first encountered Defendant's Website on or about May 12, 2026, after a friend recommended it and while she was searching online for personalized skincare, and she explored the Website with the intent to make a

purchase. Tesch maintains a daily skincare routine and has recently incorporated retinoids into it to support her skin health and texture. Retinoid use commonly causes dryness, irritation, and compromised skin barrier function, and Tesch therefore sought a moisturizer formulated for concurrent use with retinoids rather than a general-purpose moisturizer. Defendant offers such a product in Daily Sip, which it formulates and markets for use alongside its retinoid treatments. It was that formulation — a moisturizer designed to accompany the specific active ingredients Tesch uses — that made her want Daily Sip over the moisturizers otherwise available to her. Tesch became interested in Daily Sip during her visit and attempted to purchase it. Tesch is also interested in Defendant's other offerings, including its prescription retinoid treatments, which Defendant tailors to the individual customer following a telehealth evaluation by one of its dermatologists and adjusts over time through ongoing provider contact. A treatment prescribed and formulated for a particular patient cannot be obtained from a general retailer or from any source other than Defendant. Defendant operates no physical store and sells exclusively through the Website, which is therefore the only channel through which Tesch can obtain Daily Sip or the prescription treatments Defendant offers. Tesch's interest is not confined to a single purchase: moisturizer is consumed and must be replenished, and she would purchase Daily Sip from Defendant on a continuing basis as her routine requires. Tesch intends to return to the Website and purchase Daily Sip for delivery to her home. She has been unable to do so, and she cannot do so while the barriers described herein remain in place.

44) The discriminatory treatment Tesch experienced is reasonably likely to continue absent judicial intervention. The barriers Tesch encountered arise only in the course of an actual transaction; they are not conditions visible on a page at rest. The failure of keyboard focus to move to the cart dialog occurs only after a product is added, and the non-functional cart page is reached

only by a user attempting to review a cart and proceed to checkout. A page may present no apparent defect on inspection and nonetheless be impossible for a blind user to purchase from. Plaintiff has undertaken a reasonable, good-faith inquiry into the current condition of the Website, and upon information and belief each of the barriers described herein remains present and continues to prevent blind and visually impaired individuals from independently selecting and purchasing products. Defendant has never represented to Tesch that it has remediated any of those barriers, and the Website contains no remediation timeline or other public indication that Defendant has brought or intends to bring the Website into compliance with the ADA. Absent an order from this Court, Tesch has no assurance that the barriers she personally encountered will be corrected, and her injury will continue.

45) Tesch has articulated a genuine, product-specific interest in Defendant's Daily Sip moisturizer and in the related skincare products Defendant offers, including its prescription retinoid treatments. That interest is rooted in a personal, pre-existing desire to maintain a consistent daily skincare routine that improves the appearance of her skin texture and addresses visible signs of aging — one that keeps her skin comfortable and balanced while she uses retinoids, rather than requiring her to choose between the retinoid regimen she has adopted and a moisturizer that works against it, which is not formulated for concurrent use with retinoids and affords her no access to Defendant's related product line or to the tailored prescription treatments Defendant makes available only through its own Website. Tesch's interest exists wholly independent of, and predates, this litigation, as described above. As described above, Tesch has actual knowledge of the fact that Defendant's Website contains access barriers that render the Website inaccessible to, and not independently usable by, visually impaired individuals. Tesch visited the Website to buy a moisturizer for use in her own home, and she was prevented from doing so.

46) These barriers to access have denied Tesch full and equal access to, and enjoyment of, the goods, benefits and services of the Website.

47) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired Class Members.

48) Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

49) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Dearbrightly.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

**CLASS ACTION ALLEGATIONS**

50) Tesch, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

51) There are common questions of law and fact common to the class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA;

52) Tesch's claims are typical of the Class. The Class, like Tesch, is composed of severely visually impaired or otherwise blind persons, and claim that Defendant has violated the ADA by failing to update or remove access barriers on its Website so either can be independently accessible to the Class.

53) Tesch will fairly and adequately represent and protect the interests of the members of the Class because Tesch has retained and is represented by counsel competent and experienced in complex class action litigation, and because Tesch has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Tesch and the Class as a whole.

54) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
***Violation of the Americans with Disabilities Act ("ADA")***

56) Tesch, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(2)(D)(i).

58) The Website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7).

59) Defendant is subject to Title III of the ADA because it owns and operates the Website.

60) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

61) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

62) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

63) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

64) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

65) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually impaired have been denied full and equal access to the Website, have not been provided services

that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

66) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67) As such, Defendant discriminates, and will continue in the future to discriminate against Tesch and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

68) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Tesch and members of the proposed class and subclass will continue to suffer irreparable harm.

69) The actions of Defendant were and are in violation of the ADA, and therefore Tesch invokes her statutory right to injunctive relief to remedy the discrimination.

70) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Tesch requests relief as set forth below.

## SECOND CAUSE OF ACTION
***Declaratory Relief***

71) Tesch, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72) An actual controversy has arisen and now exists between the parties in that Tesch contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying visually impaired customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operates and controls, fails to comply with

applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.

73) A judicial declaration is necessary and appropriate so that the parties may understand their respective rights and obligations and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.,

a) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website, into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring Defendant to maintain such compliance on an ongoing basis, including respect to any future updates, changes, or modification to the Website;

b) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

b) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide

access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182,

c) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Tesch as Class Representative, and her attorneys as Class Counsel;

d) Pre- and post-judgment interest;

e) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

f) Such other and further relief as this Court deems just and proper.

Dated: August 6, 2026

Respectfully Submitted,

EQUAL ACCESS LAW GROUP, PLLC

**/s/ Jason B. Marshall**
By: Jason B. Marshall
IN Bar No.: 36889-49
4903 Avenue N
Brooklyn, NY 11234
jmarshall@ealg.law
(463) 777-4196
*Attorneys for Plaintiff*